Joshua Jordan, pro se
3223 Twin Church Rd
Timmonsville, SC 29161
joshlegalstuff@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

| | |
|---|---|
| JOSHUA JORDAN, PLAINTIFF, | Case No.: 8:24-cv-00152-SDM-SPF |
| v. | |
| THE CLOSET FACTORY FRANCHISE CORPORATION, A CALIFORNIA CORPORATION, | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BASED ON DEEMED ADMISSIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 36(a)(3)** |
| CLOSET FACTORY, AKA CLOSET FACTORY TAMPA, AKA TAMPA CLOSET FACTORY, AN UNREGISTERED FLORIDA BUSINESS ENTITY, | |
| JACK GREEN, INDIVIDUALLY, | |
| SYLVIA ROSADO-DELAY, INDIVIDUALLY, DEFENDANTS. | |

Plaintiff Joshua Jordan, proceeding pro se, respectfully moves this Court for summary judgment in his favor on all claims against all Defendants pursuant to Federal Rule of Civil Procedure 56, based on matters deemed admitted under Federal Rule of Civil Procedure 36(a)(3). Plaintiff respectfully requests expedited consideration of this Motion given that it is based on the automatic operation of federal procedural rules rather than disputed factual issues. In support of this Motion, Plaintiff states:

## I. INTRODUCTION

This Motion seeks summary judgment based on Defendants' failure to respond to Plaintiff's First Set of Requests for Admission served on June 16, 2025. Under Federal Rule of Civil Procedure 36(a)(3), all matters contained in those requests are now deemed admitted as a matter of law, establishing

Defendants' liability on all claims and Plaintiff's entitlement to all damages sought in the Amended Complaint.

## II. PROCEDURAL BACKGROUND

On June 16, 2025, Plaintiff served his First Set of Requests for Admission upon Defendants. See Exhibit A (Requests for Admission). Under Federal Rule of Civil Procedure 36(a)(3), Defendants had thirty (30) days to serve written responses, making the deadline July 16, 2025.

On July 16, 2025, defense counsel Robert Keller sent an email to Plaintiff stating: "We have completed responses to your Request for Admissions and will have them served today." See Exhibit B (Defense Counsel Email July 16, 2025). This email confirms that (1) all Defendants were aware of the July 16, 2025 deadline, (2) responses were completed but not yet served, and (3) Defendants intended to serve responses by the deadline.

Despite this representation, no responses to the Requests for Admission were served on July 16, 2025, or at any time thereafter through electronic service as required by Plaintiff's discovery instructions. On July 17, 2025, at 4:04 PM, Plaintiff sent a follow-up email to defense counsel stating: "Hey Rob, I just realized I did not see any email or docket filing with the responses to the RFA yesterday. Can you please send them to me? Thanks." See Exhibit B. As of the filing of this Motion, defense counsel has provided no response to this inquiry and no responses to the Requests for Admission have been served.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Federal Rule of Civil Procedure 36(a)(3) mandatorily provides: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."

The operation of Rule 36(a)(3) is automatic and creates binding judicial admissions that establish facts conclusively for purposes of the pending litigation. No declaration or affidavit is required to establish deemed admissions under Rule 36(a)(3), as they arise by operation of law from the court record.

## IV. ARGUMENT

### A. All Matters in Plaintiff's Requests for Admission Are Deemed Admitted Under Rule 36(a)(3)

Federal Rule of Civil Procedure 36(a)(3) operates automatically and mandatorily. Defendants failed to serve any response to Plaintiff's Requests for Admission by the July 16, 2025 deadline. Accordingly, all nineteen (19) requested admissions are deemed admitted as a matter of law as to all four Defendants.

Defense counsel's July 16, 2025 email confirms all Defendants' knowledge of the deadline and their collective failure to meet it. See Exhibit B. The email states responses were "completed" but acknowledges they had not yet been "served." Rule 36(a)(3) requires actual service, not mere completion of responses.

Critically, while Defendants may claim a family emergency affected Defendant Green, this provides no excuse for the failure of the other three Defendants to respond: (1) THE CLOSET FACTORY FRANCHISE CORPORATION, a California corporation; (2) CLOSET FACTORY, the local business entity; and (3) SYLVIA ROSADO-DELAY, individually. Each Defendant had an independent

obligation to respond within thirty days under Rule 36(a)(3), and a personal emergency affecting one Defendant cannot excuse the others' failures to comply with federal procedural requirements.

Moreover, Plaintiff's discovery instructions specifically required electronic service, and defense counsel's email confirms the availability of electronic communication throughout the relevant period. See Exhibit B. Any attempt to serve responses by mail would violate Plaintiff's explicit instructions for electronic service contained in the Requests for Admission. The deemed admissions arise as a matter of law, not as a result of any factual dispute requiring resolution.

**B. The Deemed Admissions Establish Defendants' Liability on All Claims**

The deemed admissions establish the following material facts without genuine dispute:

1. **Breach of Contract (Counts I-II)**:

   - RFA No. 1: Defendant Rosado-Delay stated "Everything we [Closet Factory] do is soft close" (Exhibit A)

   - RFA No. 2: The contract includes "WHITE DRAWERS & DOORS" as single line items (Exhibit A)

   - RFA No. 6: The doors installed did not have soft-close features (Exhibit A)

   - RFA No. 8: Plaintiff paid approximately $14,733.32 (Exhibit A)

2. **Fraudulent Misrepresentation (Counts III-V)**:

   - RFA No. 1: False representation that "Everything we do is soft close" (Exhibit A)

   - RFA No. 5: Email representation that "Drawers are all soft close" (Exhibit A)

   - RFA No. 13: No disclosure that soft-close applied only to drawers (Exhibit A)

3. **Unjust Enrichment (Count VI)**:

   - RFA No. 8: Payment of $14,733.32 (Exhibit A)

   - RFA No. 6: Failure to provide promised features (Exhibit A)

4. **Negligence Claims (Counts VII-VIII)**:

   - RFA No. 17: Defendant Green held license for Pinellas County only (Exhibit A)

   - RFA No. 18: Work performed in Hillsborough County (Exhibit A)

   - RFA No. 19: Operated without proper business registration (Exhibit A)

5. **FDUTPA Violations (Count IX)**:

   - Multiple deceptive practices established through RFAs No. 1, 5, 13, 16-19 (Exhibit A)

6. **Misleading Advertising (Counts X-XII)**:

   - RFA No. 1, 5: False advertising regarding soft-close features (Exhibit A)

   - RFA No. 16-19: False representations regarding licensing and registration (Exhibit A)

**C. Plaintiff Is Entitled to All Damages Sought in the Amended Complaint**

Based on the deemed admissions establishing liability on all counts, Plaintiff is entitled to the full amount of damages alleged in the Amended Complaint, totaling $654,113.56, consisting of:

1. **Compensatory Damages**: $17,233.52 (established through RFA No. 8 and additional costs)

2. **Punitive Damages**: $465,305.04 (treble damages on nine counts under Florida Statutes § 768.73)

3. **Attorney's Fees**: $71,575.00 (contractual and statutory fees under Florida Statutes § 57.105(7) and § 501.2105)

4. **FDUTPA Civil Penalties**: $90,000

## D. No Genuine Issue of Material Fact Exists

The deemed admissions under Rule 36(a)(3) create binding judicial admissions that establish facts conclusively. Defendants cannot now dispute these matters, and no genuine issue of material fact remains for trial.

## E. Counsel Error Provides No Basis for Withdrawal Under Rule 36(b)

Should Defendants attempt to withdraw these admissions under Federal Rule of Civil Procedure 36(b), such relief is not warranted. Rule 36(b) permits withdrawal only when: (1) it would serve the presentation of the merits of the action, and (2) the party who obtained the admission fails to satisfy the court that withdrawal would prejudice that party's case.

Here, defense counsel's July 16, 2025 email demonstrates this was attorney oversight, not excusable neglect. See Exhibit B. Counsel acknowledged completing responses but failed to serve them by the deadline. Courts generally do not excuse attorney error under Rule 36(b), particularly where multiple sophisticated corporate defendants are represented by experienced counsel.

Furthermore, withdrawal would severely prejudice Plaintiff, who has structured his case around these fundamental admissions and would face the burden and expense of proving facts that Defendants failed to deny within the mandatory time period.

**F. Late Service of Responses Does Not Cure the Deemed Admissions**

Rule 36(a)(3) operates automatically upon expiration of the thirty-day period. Any responses served after July 16, 2025, cannot cure the deemed admissions that arose by operation of law. Only a court order permitting withdrawal under Rule 36(b) can modify the binding effect of these admissions, and Defendants bear the burden of justifying such relief.

## V. CONCLUSION

Federal Rule of Civil Procedure 36(a)(3) operates automatically and mandatorily. Defendants' failure to serve responses by the July 16, 2025 deadline results in all requested matters being deemed admitted. Defense counsel's own email confirms knowledge of the deadline and failure to serve completed responses. See Exhibit B. These admissions establish Defendants' liability on all claims and Plaintiff's entitlement to all damages sought.

This Motion is supported entirely by the court record and documentary evidence, requiring no additional factual development. The deemed admissions arise by operation of federal law and create binding judicial admissions that resolve all material facts in Plaintiff's favor.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Grant Plaintiff's Motion for Summary Judgment in its entirety;

B. Enter judgment in favor of Plaintiff and against all Defendants, jointly and severally, in the amount of $654,113.56;

C. Award Plaintiff all compensatory damages, punitive damages, attorney's fees, and civil penalties as alleged in the Amended Complaint; and

D. Award Plaintiff his costs and such other relief as the Court deems just and proper, including any relief warranted by the facts and applicable law, even if not expressly requested herein, recognizing the persuasive reasoning of the Third Circuit in Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003), that "Pro se complaints, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

Respectfully submitted on July 17, 2025.

By: /s/ Joshua Jordan
Joshua Jordan, pro se
3223 Twin Church Rd
Timmonsville, SC 29161
joshlegalstuff@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, a true and correct copy of this document is being served via the CM/ECF federal courts electronic portal to the names and addresses provided by the parties.

By: /s/ Joshua Jordan
Joshua Jordan, Pro Se.

# EXHIBIT A

Joshua Jordan, PRO SE
3223 Twin Church Rd.
Timmonsville, SC 29161
joshlegalstuff@gmail.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

| | |
|---|---|
| **JOSHUA JORDAN,** PLAINTIFF, | Case No.: 8:24-cv-00152-SDM-SPF |
| v. | |
| **THE CLOSET FACTORY FRANCHISE CORPORATION,** A CALIFORNIA CORPORATION, | PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION |
| **CLOSET FACTORY,** AKA CLOSET FACTORY TAMPA, AKA TAMPA CLOSET FACTORY, AN UNREGISTERED FLORIDA BUSINESS ENTITY, | |
| **JACK GREEN,** INDIVIDUALLY, | |
| **SYLVIA ROSADO-DELAY,** INDIVIDUALLY, DEFENDANTS. | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Joshua Jordan hereby requests that Defendants THE CLOSET FACTORY FRANCHISE CORPORATION, CLOSET FACTORY, JACK GREEN, and SYLVIA ROSADO-DELAY (collectively "Defendants") admit or deny the following statements within thirty (30) days of service of this request. Failure to respond to these Requests for Admissions within 30 days will result in the matters being deemed admitted for the purpose of this action. As used in the following Instructions, the words "**you**" or "**your**" refer to each Defendant and their attorneys, representatives, agents, servants, employees, investigators, or consultants.

## INSTRUCTIONS

1.  Each request shall be construed independently and without reference to any other request herein for purposes of limitation, unless a request so specifies.

2.  These requests shall be deemed continuing to the extent permitted by the Federal Rules of Civil Procedure. YOU are required promptly to serve supplementary responses if YOU obtain further or different information.

3.  If YOU object to any request, state with specificity the grounds for such objection and the request(s) to which each objection applies. Any request to which an objection is made should be responded to insofar as it is not deemed objectionable.

4.  If, in answering these requests, YOU claim that any request, or a definition or instruction applicable thereto, is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as a part of the response the language YOU claim is ambiguous and the interpretation YOU have used to respond to the individual request.

5.  If YOU cannot fully answer any particular request, after exercising due diligence to make inquiry and to secure the necessary information, please answer the request to the extent possible, explain YOUR inability to answer in response to the remainder, state whatever information or knowledge YOU have concerning the unanswered portion of the request and identify the person or persons who do(es), have or might have additional knowledge or information to complete the answer.

6.  Should YOU seek to withhold any response based on some limitation of discovery (including without limitation a claim of privilege or immunity), identify the information for which the limitation is claimed and describe the basis for withholding such information, including without

limitation any claim of privilege or immunity, in sufficient detail as to permit the Plaintiff and the Court to assess the validity of the basis for withholding such information.

## **DEFINITIONS**

The following definitions shall apply to this request unless otherwise noted:

1. "**ACCESS**" shall mean permission, liberty, or ability to do any of the following: to enter, to approach, to view, to receive, to COMMUNICATE, to CREATE, or to SEND.

2. "**AND**,""**OR**,""**EACH**" and "**ANY**" are intended to be construed as necessary to bring within the scope of these requests any Documents or information that otherwise might be construed to be outside the scope of any of them. Use of a singular noun shall be construed to include the plural noun, and use of a plural noun shall be construed to include the singular noun.

3. "**COMMUNICATED**" "**COMMUNICATE**" "**COMMUNICATING**" "**COMMUNICATION**" and "**COMMUNICATIONS**" shall mean any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including by way of illustration but not limitation, correspondence, conversations, transmittal slips, memoranda, notes, telexes, telecopies, e-mails, text messages, social media postings or exchanges (including, without limitation, Skype messages, Facebook postings, Instagram postings or pictures, Google+ postings, Tweets, Twitter postings), internet commentary or postings on websites, YouTube videos, blog postings, faxes, letters, photographs, videos, dialogues, meetings, telephone conversations, online journals, voicemails, signs posted in YOUR business, written messages, discussions, interviews, consultations, agreements, and any contact or understandings between two or more persons. It shall include any and all drafts by any person in any form communicated to or received from another person or persons.

4. **"CONCERNING"** shall mean relating to, referring to, regarding, describing, pertaining to, mentioning, involving, IDENTIFYING, stating, dealing with, commenting on, responding to, discussing, depicting, analyzing, interpreting, containing, evidencing, reflecting, demonstrating, or constituting.

5. **"CONTROL"**, as it relates to a DOCUMENT, without limiting the term, is deemed to be within YOUR CONTROL if YOU have ownership, possession, or custody of the DOCUMENT, or the right to secure the DOCUMENT or copy thereof from any person or public or private entity having physical possession thereof.

6. **"CREATED"** or **"CREATES"** or **"CREATING"** shall mean make; made; brought into being; bring into being; to cause to exist; produced; to produce; to form; formed; fashioned; to fashion; to execute; executed; prepared; developed; to prepare; develop; concoct; concocted; formulate; formulated; generate; generated; build; or built.

7. **"DESCRIBE" or "DESCRIBING"** shall mean to give a detailed account in words of something including all the relevant characteristics, qualities, circumstances, or events; to recount in detail all facts and circumstances CONCERNING a particular event; to IDENTIFY all facts, circumstances, witnesses CONCERNING a particular event.

8. **"DOCUMENT" or "DOCUMENTS"** means any documents as defined by Federal Rules of Civil Procedure and includes, without limitation, in addition to its common meaning, any Communications and the original and all copies of any writing or record of any type, however produced or reproduced, maintained or capable of being retrieved, that is in YOUR possession, custody or control, or to which YOU have access. It includes, but is not limited to, letters, correspondence, memoranda, minutes, notes, films, transcripts, contracts, agreements, summaries, memoranda of telephone conversations or personal conversations or conferences, diaries, desk calendars, photographs, videotapes, books, newspapers, magazines, advertisements, bulletins,

pamphlets, statements, reports, articles of incorporation, bylaws, regulations, website postings, receipts, minutes of meetings, invoices, packing lists, interoffice communications, accounting sheets, credit files, inventory documents, shipping advises, warehouse receipts, bills of lading, files, telegrams, records, inspection reports, financial statements, SOCIAL MEDIA POSTINGS, logs, COMMUNICATIONS, ESI, financial records, intracompany communications, microfilm, microfiche, audio or video recordings, studies, analyses, notices, computer tapes or disks, lists, brochures, periodicals, charts, graphs, indices, or any other material similar, however produced or reproduced, including any copies of such documents containing notations or markings not found on the originals of such documents, that is in YOUR possession or control. "DOCUMENT" and "DOCUMENTS" mean and include all matter within the foregoing description that is in YOUR possession, control, custody, or in the possession, control, or custody of any attorney on YOUR behalf. The term "DOCUMENTS" shall include all documents in YOUR possession, custody, or CONTROL that were prepared or made before, during or after the discovery period that relate to transactions, occurrences, or operations during the discovery period.

9. **"ELECTRONICALLY STORED INFORMATION" or "ESI"** shall mean all electronically stored information of any kind, including the originals of all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise, including without limitation, the following: e-mail and attachments; SOCIAL MEDIA POSTINGS; word processing documents; spreadsheets; graphics and presentation documents; images; text files; hard drives; databases; instant messages; transaction logs; text messages; websites (current and historical); all backup materials; and all drafts, alterations, modifications, changes, and amendments of any of the foregoing. It shall also mean all data on any computer under YOUR control, including all versions and drafts of any particular file, whether such file is kept electronically or in hardcopy printout and shall include, without limitation, any and all email messages sent, received, drafted, or archived and

any and all attachments thereto. Such files produced must include the associated metadata, meaning (i) structured (fielded) information embedded in a native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production; and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device, or the custodian or non-custodial data source from which it was collected. Additionally, all such files shall be produced in their native format, meaning the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

10. **"IDENTIFY" or "IDENTIFIED" or "IDENTIFIES" or "IDENTIFYING"** shall mean, if a natural person or entity, providing the person or entity's full name, address, phone number, and a brief statement of any facts which the person or entity has knowledge relevant to the underlying action. If a document or correspondence, **"IDENTIFY"** shall mean providing the name, address and phone number of the author or maker of the document and all natural persons or entities who received a copy of the document or correspondence, a brief description of the contents of the document or correspondence, and the place where the document or correspondence is held, and who can be contacted in a subsequent production request to produce said document or correspondence.

11. **"PERSON" or "PERSONS"** shall mean any natural person or entity including, but not limited to, any individual, firm, corporation, company, partnership, member, organization, association, trade association, trust, public agency, department, bureau, board or any other form of public, private or legal entity.

12. **"RELATE," "RELATED TO" "RELATING TO," "REFER", "REFERS TO," "REFERRING TO" "RELATES TO" "REGARDING" "RELATE TO" "REFLECTING" and, "REFER TO"** are construed broadly and shall mean all information directly or indirectly describing, involving, reflecting, dealing with, consisting of, emanating from, concerning, directed at, pertaining to, setting forth, discussing, mentioning, commenting upon, supporting, contradicting, or referring to the subject matter, either in whole or in part.

13. **"SEND" or "SENT",** in connection with any writing or notice, means to deposit in the mail or deliver for transmission by any other means of communication to another; transmit; transmitted; dispatch; dispatched; forward; forwarded; remitted; route; routed; shipped.

14. **"SOCIAL MEDIA POSTINGS"** shall mean any posting, message, comment, or commentary made on or sent via Twitter; Facebook; LinkedIn; Instagram, Snapchat; WhatsApp; Facebook Messenger; WeChat; QQ; QZone; Tik Tok; Reddit; Skype; Vine; Pinterest; Tinder; or other interactive computer-mediated technology that facilitates the creation and sharing of information, ideas, career interests and other forms of expression via virtual communities and networks.

15. The use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of the request Documents or information that might otherwise be construed to be outside its scope.

16. **"PLAINTIFF"** or "**Jordan**" shall mean Plaintiff Joshua Jordan.

17. **"DEFENDANTS"** shall mean THE CLOSET FACTORY FRANCHISE CORPORATION, CLOSET FACTORY, JACK GREEN, and SYLVIA ROSADO-DELAY, jointly and/or separately as the context requires.

18. **"CONTRACT"** shall mean the agreement between PLAINTIFF and CLOSET FACTORY dated March 8, 2023, for the installation of custom closets, including all drafts, modifications, and related communications.

19. "**SOFT-CLOSE FEATURES**" shall mean any mechanism, hardware, or design element that causes doors, drawers, cabinets, or other components to close slowly, quietly, and/or automatically rather than slamming shut.

20. "**REPRESENTED**" or "**REPRESENTATION**" shall mean any statement, assertion, description, or depiction, whether oral, written, or implied, regarding any fact, condition, feature, quality, or characteristic.

21. "**SIMILAR COMPLAINTS**" shall mean any customer complaint, dispute, negative review, claim, or legal action that involves allegations similar to those raised by PLAINTIFF, including but not limited to complaints regarding misrepresentations, false advertising, failure to deliver promised features, operational defects, or poor customer service.

<u>**REQUESTS FOR ADMISSIONS**</u>

1. Admit that on or about February 22, 2023, Defendant ROSADO-DELAY stated to PLAINTIFF during a phone call that "Everything we [Closet Factory] do is soft close."

2. Admit that the CONTRACT dated March 8, 2023, includes "WHITE DRAWERS & DOORS" and "FLAT SQUARE UPPER DOORS & DRAWERS" as single line items.

3. Admit that at no point in the CONTRACT do DEFENDANTS separately describe features that apply only to drawers versus features that apply only to doors.

4. Admit that a reasonable consumer would understand features described in relation to items listed together (such as 'DRAWERS & DOORS') to apply to all such items.

5. Admit that Defendant ROSADO-DELAY sent an email to PLAINTIFF on February 27, 2023, stating "Drawers are all soft close and are a clean look in the flat square style."

6. Admit that the doors installed in PLAINTIFF's custom closet system did not have "soft-close" features.

7.  Admit that DEFENDANTS refused to add "soft-close" features to the doors in PLAINTIFF's custom closet system without charging PLAINTIFF an additional fee.

8.  Admit that PLAINTIFF paid DEFENDANTS approximately $14,733.32 for the custom closet system.

9.  Admit that Defendant ROSADO-DELAY was an agent of CLOSET FACTORY at all times relevant to this action.

10. Admit that Defendant GREEN was an owner or operator of CLOSET FACTORY at all times relevant to this action.

11. Admit that prior to PLAINTIFF's complaint, DEFENDANTS had received at least one other customer complaint regarding "soft-close" features that were promised but not delivered.

12. Admit that DEFENDANTS have a policy or practice of charging additional fees for "soft-close" features on doors, but not on drawers.

13. Admit that at no time prior to installation did DEFENDANTS specifically inform PLAINTIFF that "soft-close" features would be included on drawers but not on doors.

14. Admit that on or about July 21, 2023, Lori Gomez sent PLAINTIFF the following text message: "Josh, I am unsure what you are talking about. Maybe that was a discussion that you had with Sylvia. But I am not Sylvia. I am the office manager. We completed the work according the the contract that you signed which does not indicate soft close hinges. There is still a balance due in the amount of $1637.03. If you are neglecting to pay that balance, I will have no choice but to send it to collections."

15. Admit that THE CLOSET FACTORY FRANCHISE CORPORATION provides training, guidance, or marketing materials to its franchisees or affiliates regarding how to advertise and sell custom closet systems, including representations about "soft-close" features.

16. Admit that DEFENDANTS advertised on their website that they were properly licensed to perform work in Tampa, Florida.

17. Admit that Defendant GREEN held license C10858 for Pinellas County only and not Hillsborough County.

18. Admit that DEFENDANTS performed work at 3306 S Omar Ave, Tampa, FL 33629, located in Hillsborough County.

19. Admit that DEFENDANTS operated without proper business registration for their advertised location at 13420 Wright Circle, Tampa, FL 33626.

Respectfully submitted on June 16, 2025.

By: /s/ Joshua Jordan
Joshua Jordan, Pro Se
3223 Twin Church Rd
Timmonsville, SC 29161
843.790.3989
joshlegalstuff@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, a true and correct copy of this document was served electronically on counsel for Defendants.

By: /s/ Joshua Jordan
Joshua Jordan, Pro Se.

# EXHIBIT B

 Gmail

Joshua Jordan <joshlegalstuff@gmail.com>

---

## Jordan v. Closet Factory et al. - Case No. 8:24-cv-152-SDM-SPF

**Keller, Rob** <keller@litchfieldcavo.com>                              Wed, Jul 16, 2025 at 10:17 AM
To: "joshlegalstuff@gmail.com" <joshlegalstuff@gmail.com>
Cc: "Laliberte, Michelle" <laliberte@litchfieldcavo.com>, "Manasakis, Katerina" <manasakis@litchfieldcavo.com>

Mr. Jordan:


We have completed responses to your Request for Admissions and will have them served today.  As for the Request for Production and Interrogatories, Mr. Green had a death in his family and is en route to a funeral.  As such, we are requesting a 7-day extension of time to provide responses to the Request for Production and Interrogatories, thus making them due on Wednesday, July 23rd.  We will file the appropriate Motion with the Court.  Please let us know if you have an objection to our request for a 7-day extension of time to respond.  Thank you.


Sincerely,

Rob


**W. Robert Keller**

Attorney

D 813.579.9786 | O 813.289.0690 | F 813.289.0692

Keller@LitchfieldCavo.com



4200 W Cypress Street | Suite 450 | Tampa, FL 33607

**LitchfieldCavo.com** | **Office Locations** | **Biography**


Until further notice, we ask that all correspondence, pleadings, discovery or other documents be **sent in digital form**, via email, instead of (or in addition to) US Mail. Please understand that Litchfield Cavo has transitioned many of our workforce to hybrid work arrangements and any documents sent to our physical offices may require additional response time.


PRIVILEGE AND CONFIDENTIALITY NOTICE The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email is strictly prohibited. If you have received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.